(Reap. Dec. 9139)

INDUSSA CORP. *v.* UNITED STATES

Entry No. 825257.

(Decided May 1, 1958)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

LAWRENCE, Judge: There was imported from Belgium on or about January 8, 1955, certain enameled cast iron cooking ware.

The merchandise was entered and appraised on the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)). Appraisement was made at the *per se* unit prices, less 27 per centum discount, plus 9 per centum Belgian home sales tax, and packing charges.

Plaintiff agrees that foreign value is the proper basis of valuation, but contends that the dutiable value of the imported articles is the *per se* unit prices, less 40 per centum discount, plus 9 per centum Belgian home sales tax, and packing charges.

The record upon which determination of this cause of action must be made is solely documentary. On behalf of plaintiff, there was received in evidence collective exhibit 1, which consists of an affidavit of Philippe Romain, director of Fonderie and Emaillerie d'Audenarde, the seller of the enameled cast iron cooking ware in question. Attached thereto was a price list in French, together with an English translation. There was subsequently received in evidence, as plaintiff's exhibit 2, a supplementary affidavit of said Philippe Romain. On behalf of the defendant, a report of American Consul Roger L. Heacock of Antwerp, Belgium, together with accompanying papers, was received in evidence as collective exhibit A.

Due to its pertinence to the determination of the present issue, the affidavit accompanying collective exhibit 1 is here set forth:

Before me R. S. ALFONZO, Vice-Consul of the United States of America, duly commissioned and qualified, personally came Philippe Romain, of Audenarde, Belgium, who being first duly sworn, deposes and says:

That he is the Director of Fonderie and Emaillerie d'Audenarde, located at Audenarde, Belgium, and has held that position since 1952. He is personally familiar with the facts stated hereafter, all of which pertain to the sale of enamelled cast-iron cooking ware.

### Sales to the United States.

Since March 1953 their sales for export to the United States of enamelled cast iron cooking ware have been made exclusively to Indussa Corporation of 511 Fifth Avenue, New York, New York, and such or similar merchandise has not been freely offered for sale to the United States to other buyers.

### Sales for Home Consumption in Belgium.

Since June 1, 1954 all of their sales of such enamelled cast iron cooking ware in Belgium have been made in accordance with a price list, signed copy of which is hereto attached and marked Exhibit "A".

The greatest number of sales for consumption in Belgium of such enamelled cast-iron cooking ware in quantities of 500 kilograms or more and carried the discount of 40% from the list price. For example, their sales for home consumption in Belgium for the period July 1, 1954 to June 30, 1956 were as follows:

| | Discount | Number of Sales |
|---|---|---|
| 500 kilograms or more | 40% | 479 |
| 350 kilograms to 500 kilograms | 35% | 6 |
| 200 kilograms to 350 kilograms | 30% | 32 |
| 50 kilograms to 200 kilograms | 27% | 77 |

Prior to July 16, 1955 such sales in Belgium were subject to a Taxede Transmission of 9% of the net invoice amount and after such date such tax was 10% of the net invoice amount.

In order to make more specific the information contained in the foregoing affidavit with regard to sales for home consumption in Belgium, at or about the time the instant merchandise was exported, permission was granted to plaintiff by the court, without objection by the defendant, to submit the supplementary affidavit of Philippe Romain (exhibit 2), the pertinent portion of which is quoted below—

That the sales for home consumption in Belgium for the period July 1, 1954 to December 31, 1954 were as follows:

| | Discount | Number of Sales |
|---|---|---|
| 500 kilograms or more | 40% | 105 |
| 350 kilograms to 500 kilograms | 35% | 3 |
| 200 kilograms to 350 kilograms | 30% | 8 |
| 50 kilograms to 200 kilograms | 27% | 18 |

There is agreement by the parties hereto that export value, as such value is defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), did not exist for such or similar merchandise at the time of exportation of the enameled cast iron cooking ware here in issue, for the reason that the plaintiff corporation was the exclusive importer thereof.

It is apparent from the record that the issue before the court is a limited one, namely, whether, within the confines of statutory foreign value, the discount to be allowed on merchandise of the kind here in controversy when freely offered for sale to all purchasers in the

principal markets of the country from which exported, in the usual wholesale quantities, and in the ordinary course of trade, should be 27 per centum, as determined by the appraiser of merchandise, or 40 per centum, as claimed by plaintiff.

The determination of the proper applicable discount necessarily involves a question of the usual wholesale quantities.

The evidence of record discloses that merchandise identical to that before the court was freely offered for sale in the home markets and that the manufacturer does not attempt to control prices to the consumer. It further appears that, prior to June 1, 1954, there were three categories of purchasers—wholesalers, semiwholesalers and large retailers, and consumers. At that time, such or similar merchandise was freely sold in the principal market of Belgium at list prices, with discounts of 40 per centum, 35 per centum, and 30 per centum, to the foregoing respective purchasers. Subsequent to June 1, 1954, there was a change in the manufacturer's sales policy to the extent that it was the ordinary course of trade to allow a discount predicated on the weight of the items purchased and not on the category of the purchaser. Anyone purchasing in quantities of 500 kilograms or more would be given a 40 per centum discount; for purchases of 350 kilograms to 500 kilograms, a 35 per centum discount would apply; from 200 kilograms to 350 kilograms, 30 per centum, and from 50 kilograms to 200 kilograms, 27 per centum.

From the summary of sales for home consumption in Belgium for the period from July 1 to December 31, 1954, contained in plaintiff's exhibit 2, it appears that sales to all purchasers in quantities of 500 kilograms or more clearly predominated, and for such sales a discount of 40 per centum was allowed. Based upon the foregoing, plaintiff's contention, supported as it is by satisfactory evidence, is a valid one and should be granted.

Defendant, in its brief, contends that the statement contained in plaintiff's collective exhibit 1 that "The greatest number of sales for consumption in Belgium of such enamelled cast-iron cooking ware in quantities of 500 kilograms or more and carried the discount of 40% from the list price" is a conclusion and devoid of probative value. If we were to consider the quoted statement as standing alone and out of context, there might be some value to said contention. However, the court must also take into consideration that said exhibit 1, supplemented by exhibit 2, continues with a listing of a summary of relevant sales for the pertinent time. As was stated by the Court of Customs and Patent Appeals in *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513—

We think it unwise to attempt to set out an all-inclusive formula as to what is or is not substantial evidence of the usual wholesale quantities. That must await case by case development in the light of the *Brooks* decision [40 C. C. P. A.

(Customs) 38, C. A. D. 495] and other pertinent decisions by this court. Perhaps less may be held sufficient, but where the exporter of the imported merchandise is the sole producer of such merchandise in the country from which exported, as in this case, we think the party challenging the appraised value in the first instance would be wise to at least present a *summary* of the relevant sales for the pertinent time period, so that the customs courts may be able to decide all relevant questions of law and fact in order to determine what is the *usual wholesale* quantity. * * * [Italics quoted.]

In the light of the foregoing quotation from the *Fisher* case, it is the opinion of the court that plaintiff herein has satisfactorily proven the usual wholesale quantity to be 500 kilograms or more.

The second main objection raised by defendant is that, inasmuch as the articles of enameled cast iron cooking ware are shown by the price list forming part of the record before the court to be sold on a per unit basis depending upon size and coating, to establish a usual wholesale quantity on the basis of weight "would result in a fictitious value for each unit."

Defendant directs attention to the case of *J. J. Gavin & Co., Inc., (Salomon & Phillips)* v. *United States*, 38 C. C. P. A. (Customs) 69, C. A. D. 441, as negativing the relief sought by plaintiff herein. In the *Gavin* case, the dutiable value of certain saddle soap, together with various kinds of other mechandise, exported from England, was in issue. In that case, the Court of Customs and Patent Appeals quoted, with approval, the following conclusions of law arrived at by the appellate division of the Customs Court (24 Cust. Ct. 530, Reap. Dec. 7790)—

1. That we must reject *in toto* the contention of appellant that the total money value of the individual sales rather than the unit quantity of merchandise contained in the individual sales should be used as a basis in finding the proper value of the merchandise.

2. That in finding the proper value of the saddle soap, we are limited to a consideration of sales of *saddle soap only,* and are not permitted to consider also the sales of *other unrelated items of merchandise* made by the exporter herein.

3. That the proper dutiable foreign market value of the saddle soap here involved, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. sec. 1402 (c)), is as set out in finding of fact No. 4, *supra.* [Italics added.]

It is the opinion of the court that the *Gavin* case is clearly distinguishable from the facts in the present record. Here, the 40 per centum discount was given to all purchasers of quantities of 500 kilograms or more of enameled cast iron cooking ware, and said articles, though varying in size and coating, were related items of merchandise.

Whereas research does not disclose any case before this or the appellate court where a marketing condition precisely similar to the one here presented was passed upon, it is believed that there is a close analogy to the *Fisher Scientific Company* case, *supra.* The mer-

chandise there involved consisted of various models of precision analytical balances for weighing small quantities of materials. Any purchaser, whether wholesaler, retailer, or consumer, who bought in quantities of from one to four analytical balances paid a higher price than any purchaser who bought five or more of such articles, the latter purchaser being entitled to a wholesale discount of approximately 25 per centum. It further appeared that the latter purchaser was not confined to buying five or more of one model, but would qualify for the benefit of the discount if the purchase consisted of five or more of assorted models of analytical balances, the different models having varying unit prices. In the course of its opinion, the appellate court stated as follows—

The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. Foreign value is not the price to wholesalers, but the price in the usual wholesale quantities. The law is not concerned with the persons who buy, but the manner in which they buy. *United States* v. *Richard & Co.*, 15 C. C. P. A. (Customs) 143, T. D. 42216. It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity* in the ordinary course of trade, namely, *5 or more* balances. We think it necessarily follows, in view of the foregoing, that in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances. [Italics quoted.]

Since the court, in the *Fisher* case, allowed a 25 per centum discount in determining foreign value applicable to usual wholesale quantities of five or more of one *or assorted* models of analytical balances, it is the opinion of the court in the case at bar that the foreign value of the enameled cast iron cooking ware in issue is shown to be subject to a 40 per centum discount on a usual wholesale quantity of 500 kilograms or more of such cooking utensils, whether or not said quantity consists of one or more sizes of enameled cast iron cooking ware.

Upon the record, the court finds as facts—

1. That the merchandise involved herein consists of enameled cast iron cooking ware.

2. The involved merchandise was freely offered for sale to all purchasers, in the ordinary course of trade, in the principal markets of Belgium for home consumption, in the usual wholesale quantities of 500 kilograms or more.

3. Such cooking ware was not freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade, in the principal markets of Belgium, for exportation to the United States.

4. That said merchandise, when freely offered for sale or sold to all purchasers in Belgium for home consumption, in the usual wholesale quantities and in the ordinary course of trade, at or about the

time of the instant importation, was sold at the *per se* unit prices found by the appraiser, less 40 per centum discount, plus 9 per centum Belgian home sales tax, and packing charges.

The court concludes as matters of law—

1. That foreign value, as that value is defined in section 402 (c), as amended, *supra*, is the proper basis for determining the value of the instant merchandise.

2. That said value is represented by the *per se* unit prices found by the appraiser, less 40 per centum discount, plus 9 per centum Belgian home sales tax, and packing charges.

Judgment will be entered accordingly.