(A.R.D. 100)

UNITED STATES *v.* INDUSSA CORP.

Entry No. 825257.

Third Division, Appellate Term

(Decided February 5, 1959)

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel); *Norman C. Schwartz,* associate counsel; for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is an application for review of a decision and judgment rendered by a single judge sitting in reappraisement, *Indussa Corp.* v. *United States,* 40 Cust. Ct. 800, Reap. Dec. 9139.

The merchandise involved herein consists of various articles of cast iron cooking ware, namely, frying pans, sauce pans (in two sizes), and casseroles, imported from Belgium on or about January 19, 1955. It was appraised on the basis of foreign value at unit list prices, less 27 per centum, plus 9 per centum, plus packing. It has

been conceded that foreign value is the proper basis of valuation, there being no export value. Furthermore, there is no dispute respecting the *per se* unit prices of the merchandise or the addition of the 9 per centum, which is a Belgian sales tax, and the packing charges. The plaintiff claims, however, that a discount of 40 per centum instead of 27 per centum should have been allowed in determining the proper valuation of the merchandise. This claim was sustained by the trial judge in the decision and judgment above referred to.

The record herein is solely documentary, consisting of an affidavit of Philippe Romain, director of Fonderie and Emaillerie d'Audenarde, together with a pricelist in French and an English translation (plaintiff's collective exhibit 1), a supplementary affidavit of said Philippe Romain (plaintiff's exhibit 2), and a report of Roger L. Heacock, American consul, and accompanying papers (defendant's collective exhibit A).

In the first affidavit of Philippe Romain, it is stated that, since March 1953, Fonderie and Emaillerie d'Audenarde has sold its enameled cast iron cooking ware for exportation to the United States solely to Indussa Corp. and that such or similar merchandise has not been freely offered for sale in the United States to other buyers.

The affidavit states further that, since June 1, 1954, all sales in Belgium have been made in accordance with the pricelist attached to the affidavit and that the greatest number of sales for home consumption was in quantities of 500 kilograms or more and carried a discount of 40 per centum. Sales for home consumption for the period of July 1, 1954, to June 30, 1956, were listed as follows:

| | Discount | Number of sales |
|---|---|---|
| 500 kilograms or more | 40% | 479 |
| 350 kilograms to 500 kilograms | 35% | 6 |
| 200 kilograms to 350 kilograms | 30% | 32 |
| 50 kilograms to 200 kilograms | 27% | 77 |

In the supplemental affidavit, sales for home consumption for the period of July 1, 1954, to December 31, 1954, were listed as follows:

| | Discount | Number of sales |
|---|---|---|
| 500 kilograms or more | 40% | 105 |
| 350 kilograms to 500 kilograms | 35% | 3 |
| 200 kilograms to 350 kilograms | 30% | 8 |
| 50 kilograms to 200 kilograms | 27% | 18 |

The pricelist attached to the first affidavit covers 34 different articles of enameled cast iron cooking ware, such as saucepans, frying pans, deep-fat fryers, casseroles, stewpots, serving dishes, waffle irons, griddles, and skillets. Each of these articles is separately priced. Many of them come in different sizes, each with its own price.

At the end of the pricelist, it is stated:

On the prices in the above price-list, the following discounts may be granted:
from 50 kg. to 200 kg. or from 2,500 frs. gross to
10,000 frs. gross—list price less 27%
from 200 kg. to 350 kg. or from 10,000 frs. gross to
17,500 frs. gross—list price less 30%
from 350 kg. to 500 kgs. or from 17,500 frs. gross to
25,000 frs. gross—list price less 35%
500 kg. and over or 25,000 frs. gross and over: list price less 40%

The report of the American consul confirms that sales for export to the United States were made exclusively to one purchaser and states that identical merchandise was offered for sale on the home market without restriction.

In determining the foreign value of the instant merchandise, the only question at issue is whether the discount of 40 per centum should be allowed, as claimed by the importer and as held by the trial judge, or whether the appraised value must be sustained. The applicability of the discount depends upon the quantities which are found to be the usual wholesale quantities in which the imported merchandise was freely offered for sale at the time of exportation to all purchasers for home consumption in the principal markets of Belgium.

Two decisions of our court of appeals are particularly pertinent to this issue: *United States* v. *Fisher Scientific Company,* 40 C.C.P.A. (Customs) 164, C.A.D. 513, relied upon by the appellee, and *J. J. Gavin & Co., Inc. (Salomon & Phillips)* v. *United States,* 38 C.C.P.A. (Customs) 69, C.A.D. 441, relied upon by the appellant.

In the *Fisher* case, the merchandise consisted of Mettler analytical balances, of which three models were offered for sale at varying prices. They were offered to all purchasers in Switzerland in quantities of one to four of one model or assorted models at one set of prices and in quantities of five or more of one or assorted models at another set of prices. The court found that there was only one wholesale quantity in the ordinary course of trade, namely, five or more balances; that that was the usual wholesale quantity within the meaning of section 402(c) of the Tariff Act of 1930; and that the foreign values were the prices applicable to sales of five or more balances.

In the *Gavin* case, the imported merchandise consisted of saddle soap, imported from England. There was evidence that, in England, it was the universal practice of manufacturers and dealers to allow discounts based on the total money value of the particular sale. The court disallowed such discounts, stating that the appraised valuation of the imported articles had to be based upon the unit of quantity in which they were offered for sale and not upon a total money value and that the appraisal cannot be based upon the value of saddle soap in combination with the values of other different items.

In the instant case, the merchandise consists of three distinct articles of cooking ware—frying pans, saucepans (in two sizes), and casseroles. Such articles are not totally unrelated ones, as in the *Gavin* case, but are something other than different models of the same articles, as in the *Fisher* case. These articles were offered for sale at *per se* unit prices, but discounts were offered not only on the basis of the total money value of the entire purchase, as in the *Gavin* case, but also on the basis of the total quantity by weight of such purchase. There is evidence that the major portion of sales of combinations of various articles of cooking ware was in quantities of 500 kilograms or more. There is no evidence to show the quantity in which each of the imported articles was usually bought and sold separately.

As was pointed out by the Government in the *Gavin* case, duties are levied upon imported *articles*, not upon the total value of a particular purchase or the total quantity set forth in the invoice. Consequently, the value of the individual articles imported must be determined for the purposes of appraisement. One of the elements involved in finding such value is the usual wholesale quantities in which such or similar merchandise is freely offered for sale to all purchasers. The question here is whether the usual wholesale quantities of individual imported articles, such as frying pans, may be found by reference to the combined wholesale quantity or weight of various articles of cooking ware.

Section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides:

(c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, * * *.

As we construe this section, the foreign value of frying pans, for instance, is the market value or price at which such or similar frying pans are freely offered for sale to all purchasers, in the usual wholesale quantities in which such or similar frying pans are so offered. We do not construe it to mean the usual wholesale quantities in which a total quantity of various articles of cooking ware is offered and sold.

In reaching the opposite conclusion, Judge Lawrence relied upon the *Fisher* case, stating:

Since the court, in the *Fisher* case, allowed a 25 per centum discount in determining foreign value applicable to usual wholesale quantities of five or more of one or *assorted* models of analytical balances, it is the opinion of the court in the case at bar that the foreign value of the enameled cast iron cooking ware in issue is shown to be subject to a 40 per centum discount on a usual wholesale quantity of 500 kilograms or more of such cooking utensils, whether or not said quantity consists of one or more sizes of enameled cast iron cooking ware. [Italics quoted.]

However, as we have pointed out, the merchandise before the court does not consist merely of one or more sizes of the same article, but includes several different articles offered for sale at *per se* unit prices. The discount claimed is one based upon the total quantity by weight or the total value of combinations of many different articles of cooking ware sold at the same time.

While the evidence in the *Fisher* case showed that one set of prices applied to sales of one to four of one model or *assorted models* and another to five or more of one or *assorted models,* the court held the usual wholesale quantity to be five or more balances. It did not discuss the fact that the balances came in three models or how this might affect the determination of the usual wholesale quantities of the imported merchandise. Throughout the litigation, the merchandise was considered to be *balances,* and the question at issue was the major portion of sales of balances. In reaching its conclusion, the court said (p. 169):

Both the affidavit of Exhibit 1 and the report of Exhibit A clearly establish that in the ordinary course of trade there are, in the instant case, only two price categories, and that price varied only with the quantity purchased. *Any purchaser*, whether wholesaler, retailer or consumer, who bought in quantities of 1 to 4 paid according to the higher price schedule; but *any purchaser* who bought 5 or more balances paid according to the second price schedule, at a wholesale discount of approximately 25%. * * *

The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. * * * It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity* in the ordinary course of trade, namely, *5 or more balances.* We think it necessarily follows, in view of the foregoing, that in this case the usual wholesale quantity within the meaning of section 402(c) is *5 or more balances.* [Italics quoted.]

This conclusion, that the usual wholesale quantity under the circumstances presented was five or more balances, is not determinative of the question here, namely, whether the usual wholesale quantity of particular articles offered for sale at prices per article may be found on the basis of sales combining by weight or value many distinct articles of cooking ware, which sales might or might not include the particular articles under appraisement.

In our view, the principle of the *Gavin* case is controlling. There, the saddle soap was offered at a *per se* price, less a discount of 17½ per centum, if the total value of various articles purchased amounted to £10 or more, and it was held that the appraised valuation could not include the value of saddle soap in combination with the value of other different articles. In the instant case, each article of cooking ware was offered at a *per se* price, less a discount of 40 per centum, if the total quantity of various articles of cooking ware purchased

amounted to 500 kilograms or more or if the total value amounted to 25,000 francs or more. The situation here is thus analogous to that in the *Gavin* case. Therefore, we hold that the usual wholesale quantities and, consequently, the value of each particular article may not be found on the basis of the total quantity by weight or the total value of combinations of such article with other different articles.

Since the record does not establish the usual wholesale quantities in which each of the imported articles is separately sold to all purchasers in the home market, we cannot determine which, if any, of the discounts offered by the seller would be applicable. Appellee has not met its burden of proving values for the merchandise different from the appraised values, which are presumptively correct and must be sustained.

On the record presented, we make the following findings of fact:

1. That the merchandise involved herein consists of enameled cast iron frying pans, saucepans (in two sizes), and casseroles, imported from Belgium on or about January 19, 1955.

2. That the involved merchandise was not freely offered for sale to all purchasers in the principal markets of Belgium in the usual wholesale quantities in the ordinary course of trade for exportation to the United States.

3. That the involved merchandise was freely offered for sale to all purchasers in the principal markets of Belgium at list prices per article.

4. That varying discounts were allowed on the basis of the total weight or the total value of the entire quantity of cooking ware purchased.

5. That the record does not establish the quantities in which each of the imported articles was separately offered for sale to all purchasers in the home market.

We hold as matters of law:

1. That foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended, is the proper basis for determining the value of the involved merchandise.

2. That the record is insufficient to establish the usual wholesale quantities in which each of the imported articles was freely offered for sale for home consumption in the principal markets of Belgium in the ordinary course of trade.

3. That the usual wholesale quantities and the proper value of the imported frying pans, saucepans, and casseroles cannot be based upon the usual wholesale quantities or the total value of such articles in combination with other different articles of cooking ware.

4. That the importer has failed to overcome the presumption of correctness attaching to the values found by the appraiser.

5. That the proper values for the merchandise involved herein are the appraised values.

The decision and judgment of the trial court are reversed. Judgment will be rendered accordingly.